SAVAGE, GORDON and TURLEY, Railroad Commissioners, v. P. P. PICKARD, Comptroller.

RAILROAD COMMISSIONERS. *Salary. Temporary injunction.* The statute which creates a railroad commission provides that each commissioner shall receive a salary of $2,000 annually "unless restrained by law from the performance of their duties." *Held*, that their salaries would not cease upon the suing out by several railroad companies of temporary injunctions against the performance of their functions, so far as those roads were concerned, which injunctions the courts, upon motion and argument for the purpose, declined to dissolve, but had not made perpetual by final decrees.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville, A. G. MERRITT, Ch.

VERTREES & VERTREES for complainants.

ATTORNEY-GENERAL LEA for defendant.

COOPER, J., delivered the opinion of the court.

*Mandamus* bill by the Railroad Commissioners appointed under the act of 1883, chapter 199, to compel the defendant, as Comptroller of the Treasury of the State, to issue to them a warrant on the treasury for their respective salaries from March 25, 1884. The chancellor granted the relief sought, and the defendant. appealed.

On March 29, 1883, the General Assembly of the State passed an act, which was approved by the Governor on the next day and went into effect at once,

entitled "An act to provide for the regulation of rail-
road companies and persons operating railroads in this
State; to prevent discrimination upon railroads in this
State; and to provide for the punishment of the same;
and to appoint a railroad commission." By section 11
of this act, it is made the duty of the Governor to
nominate three competent persons, one from each Grand
Division of the State, who shall hold their offices
until the first day of January, 1885. By section 15
it is provided that: "The members of said commis-
sion shall each receive a salary of two thousand dollars,
unless restrained by law from the performance of their
duties, to be paid as the salaries or other State offi-
cers." By the act of 1883, chapter 259, making ap-
propriations for the expenses of the State government
for the years 1883 and 1884, it is provided by sec-
tion 44: "That the Comptroller issue his warrant for
the sum of two thousand dollars each, annually, to the
railroad commissioners as salaries."

The complainants were duly appointed by the Gov-
ernor Railroad Commissioners of the State, and they
qualified as such on April 25, 1883. They proceeded
to perform the duties of the office, and the Comptroller
paid them 'their salaries up to March 25, 1884. In
the meantime, commencing on January 11, 1884, sev-
eral of the railroad companies of the State, or having
roads in this State, filed bills against the complainants
as railroad commissioners to enjoin them from attempt-
ing to carry out the provisions of the act under which
they were appointed, so far as their companies, or
their roads in the State were concerned. The Louis-

ville & Nashville Railroad Company, the East Tennessee, Virginia & Georgia Railroad Company, the Memphis & Charleston Railroad Company, and the Knoxville & Ohio Railroad Company filed bills in the Circuit Court of the United States at Nashville; and the Illinois Central Railroad Company, and the Chesapeake, Ohio & Southwestern Railroad Company filed bills in the chancery courts of the State at Bolivar and Memphis. In all of these cases temporary injunctions were granted and remain in force, the United States Court at Nashville, upon argument of counsel, refusing to dissolve the injunctions granted in that court. There has been no final hearing of any of these causes, nor of course any decree of the courts making the injunctions perpetual. A number of railroad companies having roads in this State have not instituted legal proceedings, or obtained injunctions against the commissioners, including the Nashville, Chattanooga & St. Louis Railway and its various branches; the Cincinnati Southern; the Mississippi & Tennessee; the Mobile & Ohio; the Western & Atlantic; the East Tennessee & Western North Carolina; the Knoxville & Augusta; the Rogersville & Jefferson railroad companies. The complainants, as commissioners, have continued to perform the duties of their office except as to the railroad companies which have obtained injunctions. The Comptroller of the State contends that these injunctions have the effect to terminate the salaries of the commissioners under section 15 of the Act.

That section provides that the commissioners shall

each receive a salary of $2,000, "unless restrained by law from the performance of their duties." The act under which the commissioners are appointed contains thirty-one sections, and provides for the performance by them of various duties. It is made their duty to investigate and determine whether the provisions of the act have been violated by any railroad company, and to institute suits in the name of the State for the recovery of penalties for such violation; to revise the companies' tariffs of charges; to hear complaints against such tariffs of charges; to have an office at Nashville, hold monthly meetings, and keep a record of the proceedings; to notify the companies when, in their opinion, repairs are necessary upon a railroad, additions to the rolling-stock, addition or change of stations are required, etc.; to examine the railroads, and keep themselves informed as to their condition and operation; to recommend in writing to the companies' such measures and regulations as may be conducive to the public safety and interest; to go to the scene of accidents, and inquire into the facts and circumstances, keeping a record thereof; to summon and examine witnesses in relation to the affairs of any company; to make annual reports to the Governor, with recommendations; and to confer with railroad commissioners of other States, etc. Some of these duties bear directly on the railroad companies, while others do not, being merely advisory to the company, to the citizen, or the State. As a matter of course, the State would not be likely to interfere with any of these duties except by modifying or repealing the

statute, and did not, by the clause in question, refer to any restraining law to be passed by the Legislature. The act manifestly contemplates a restraint by the courts. It can scarcely be supposed that the Legislature intended to make the salaries cease only upon the occurrence of so remote a possibility as a complete restraint, by judicial action, of the performance of all duties. On the other hand, it is even more improbable that the Legislature intended the salaries to cease so soon as any railroad company might obtain a temporary injunction, such an injunction in the State courts being generally *ex parte* without notice. And if it is difficult to see how the contingency of the statute can take effect upon the existence of a single injunction, it is equally difficult to suppose that the contingency was not to arise until every railroad company in the State had resorted to the injunctive power of the courts. We must, therefore, try to ascertain some middle term between these extreme views, which will be within the words used, and give us a possible clue to the legislative intent. The object of a temporary injuction is merely to hold parties where they are until their rights can be legally determined. The operation of a statute of manifest importance in the view of the Legislature, which provides for the appointment and election of State officers for an indefinite period, whose salaries are secured by an express appropriation of public money, would not be likely to be made dependent on that which settles nothing. It is far more probable that the salaries, and consequently the operation of the statute, were intended to cease

when the commissioners were restrained from the per-
formance of some of their most material functions by
the decree, on final hearing, of a competent court
having jurisdiction of the persons and the subject
matter. And this for the reason that it is only upon
a final judicial determination that it can be said, with
substantial accuracy, that the commissioners are "re-
strained by law." At any rate, the salaries are not
affected by temporary injunctions.

The decree of the chancellor will therefore be af-
firmed, with costs.

WILSON, Sp. J., did not participate in the decision
of this case.